SCHOCK v. OLSEN & TILGNER MFG. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. August 11, 1906.)

No. 1249.

1. PATENTS—INFRINGEMENT—BARREL-WASHING MACHINES.

The Klamt patent, No. 400,346, for a barrel-washing machine construed and *held* not infringed.

2. SAME—ANTICIPATION.

The Schock patent, No. 605,138, for a barrel-washing machine is void for anticipation.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

For opinion below, see 145 Fed. 633.

The appellant, Gustav Schock, was the complainant below and sued the appellees for infringement of two patents for barrel washers, and this appeal is from a decree on final hearing, dismissing his bill for want of equity.

The first patent is No. 400,346, issued to E. Klamt, March 26, 1889, and assigned to the complainant December 6, 1897, containing seven claims, of which the first three are involved in the alleged infringement, namely:

"(1) The improved automatic barrel-washing machine herein described, combining a tank adapted for filling the barrels with water, top and end brushes operated by levers for washing and scrubbing said barrels, a tank adapted for cleansing and rinsing the barrels after being washed and scrubbed, rollers to cause the barrel to revolve, and an arm for automatically transferring the barrel to the rinsing-tank, as and for the purposes set forth.

"(2) An automatic barrel-washer combining a plurality of washing tanks, a carrier for conveying or transferring the keg or barrel from one tank to the next, and a scrubber or washer for removing the adhering dirt in the transfer, as set forth.

"(3) In a barrel-washing machine, a water-tank, a revolving shaft provided with arms for receiving, holding, and automatically discharging the barrel from the tank, pawl-and-ratchet wheel for regulating the motion of the shaft, crank, levers, and rods connecting said shaft with the main driving-shaft of the machine, substantially as described, and for the purposes set forth."

The structure of this patent is illustrated as follows:

The other patent is No. 605,138, issued to Gustav Schock, June 7, 1898, on application filed May 14, 1897, and infringement is alleged of claims 1, 2, 3, 4, 5, 7, and 8, reading as follows:

"(1) In a barrel-washing apparatus, the combination of a barrel-feed tank, an inclined run in said tank adapted to support a plurality of barrels and to enable them to move thereon in one direction, and revolving hooks and means for revolving them in the opposite direction so that they will mechanically pick the first of said barrels off of the inclined run in the feed-tank, substantially as described.

"(2) In an apparatus for soaking, scrubbing and washing barrels at one continuous operation, the combination of a scrubbing device, a feed-tank, mechanism for transferring the barrels from the feed-tank to the scrubber and gravity-runs within the feed-tank for automatically feeding barrels in one direction to the transferring mechanism moving in the opposite direction.

"(3) In a barrel-washing apparatus, the combination of a barrel-feed tank, gravity-runs therein in pivotal connection with the tank, and means for adjusting the said runs so as to give the keg the desired quantity of water so that large and small packages can be supplied with water to the desired extent, substantially as described.

"(4) In a barrel-washing apparatus, the combination of a barrel-feed tank, movable gravity-runs therein, means for raising and lowering one end of the runs whereby to supply the barrels on the runs with the desired quantity of water, and means for lifting the barrels off of said runs.

"(5) In a barrel-washing apparatus, the combination of a barrel-feed tank, gravity-runs therein, arms for picking up barrels from the gravity-runs and delivering the same from the tank, and gear for operating the arms in a direction opposite to the motion of the barrels on the gravity-runs.

"(6) In an apparatus for soaking, scrubbing and washing barrels by one continuous operation, the combination of a barrel-feed tank, inclined runs therein, means for adjusting the runs to various inclinations, means for lifting the barrels from the barrel-feed tank, and a barrel-scrubber to which the barrels are delivered by the lifting mechanism, the barrel in the scrubber being automatically discharged and replaced by the next succeeding barrel delivered from the lifting means.

"(7) In an apparatus for soaking, scrubbing and washing barrels by one

continuous operation, the combination of a barrel-feed tank adapted to contain a plurality of barrels, inclined gravity-runs within said tank along which runs the barrels are free to move from end to end, a barrel-scrubber, revolving hooks moving in a direction opposite to that of the feed of the barrels. said hooks being adapted to lift the first barrel of the series off the runs and deliver it from above to the scrubber, the barrel in the scrubber being automatically replaced by the next succeeding barrel delivered from the revolving hooks."

And the following drawing exhibits the structure in side elevation:

The alleged infringement device of the appellees is illustrated as follows:

Arthur Briesen, for appellant.
Thomas Banning. for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts). The two patents in suit are for barrel-washing machines, having special adaptability for cleansing beer kegs for refilling in the use of breweries. Various prior devices are in evidence, and the object sought in each, alike with these patent structures, is to wash the kegs, inside and out, in rapid succession, with the utmost saving of manual labor. The appellant's device, under his patent No. 605,-438, is an obvious improvement, in function at least, over the prior

patents referred to, and its utility is not only recognized by the trade, but in effect conceded on the part of the appellees by the adoption of like means in their rival machine. With that patent considered alone, the language of its claims in suit plainly covers the appellees' structure, and the only inquiry in that view is whether they are valid and entitled to such literal interpretation. The prior patent to Klamt, No. 400,346, involves other considerations, particularly on the issue of infringement, and the contention that a decree in favor of the appellant is authorized under this patent, raises the first question for review.

1. The Klamt patent, in specifications and drawings, expressly describes a two-tank machine—one for hot water to soak and fill the kegs and the other for cold water to rinse them—with intermediate scrubbing means. Infringement is alleged of claims 1, 2, and 3. Claim 1 specifies this dual provision of tanks, in combination with brushing mechanism, rollers to revolve the barrels and an arm to transfer them to the rinsing tank; claim 2 specifies the combination of "a plurality of washing tanks," a carrier to transfer the barrels from one to the other and a scrubber; and claim 3 reads:

"In a barrel-washing machine, a water-tank, a revolving shaft provided with arms for receiving. holding, and automatically discharging the barrel from the tank, pawl-and-ratchet wheel for regulating the motion of the shaft, crank, levers, and rods connecting said shaft with the main driving-shaft of the machine, substantially as described, and for the purposes set forth."

No distinctively novel mechanism appears in this arrangement, and unless invention resides in the double tank provision in the combination, neither of these claims is sustainable under the evidence. So claim 3, equally with claims 1 and 2, must be limited to the double tank type of machine, and the single tank machine of the appellees (having no rinsing or cold water tank) is not within either claim. The contention that the appellees' spraying and scrubbing means—an old device, exemplified in the Pohl (1879) patent, No. 213,-447—furnishes the equivalent of the rinsing tank of the patent, is untenable. It does not perform the function claimed in the patent of rinsing the inside of the kegs; nor can the claims be thus extended under any admissible view of invention disclosed in the patent. Without reference to other substantial departures from the means specified in this patent, we are satisfied that infringement does not appear.

2. The validity of the Schock patent (No. 605,138) is challenged, both for anticipation and for want of invention in the light of the prior art. From the file wrapper in evidence it appears that the application and claims as presented were repeatedly rejected by the Patent Office, upon various references to prior patents, including the above-mentioned Klamt patent. After repeated amendments of the claims, to meet objections for conflict or want of invention, the claims in suit were allowed and the patent issued. The limitations thus imposed leave little, if any. scope for the claims beyond the several means which are specifically shown; and if invention appears in the adaptation of either means or in combination as an entirety, it is unquestionably of narrow scope under the references.

Use of a "barrel-feed tank" supplied with hot water to soak and fill the kegs, in combination with tracks and means to convey and transfer them in succession, was well known in 1897, when the Schock application was filed. Such use is exemplified, among other references in the above-mentioned proceedings in the Patent Office, in Klamt's (1889) patent, No. 400,346, Gottfried's (1891) patent, No. 450,149, and Anderson's (1893) patent, No. 489,066; and incline skids for runways and lifting arms or hooks for removing the kegs are distinctly shown in the Klamt and Gottfried patents. Indeed, priority in these features is disclaimed on behalf of the appellant, except for the inclined skids or so-called "gravity runs" in the combination.

Aside from these prior patents, however, the testimony is convincing and undisputed that barrel-washing machines were in constant public use in one brewery, at least, more than two years prior to the Schock conception, which were anticipations of the patent structure and embodied substantially all the elements in either of the claims in controversy. Three instances of prior construction and use of like barrel-washing devices are in evidence—one made in West Side Brewery, Chicago, in 1888 or 1889, another in the Blatz Brewery, Milwaukee, Wis., in 1894, and the third in Cream City Brewery, Milwaukee, in 1896. The machine of the Blatz Brewery is established by proof which satisfies the utmost requirements of the strict rule applicable to such issue—as to date, structure and use—and we are satisfied that it is decisive, without reference to the other instances not so well defined.

Previous to October, 1794, several machines, under the Anderson patent, No. 489,066, were in use in this brewery, consisting of soaking tanks about 20 feet in length, equipped with gear wheels, traveling chains and cross bars, so that the barrels were delivered at one end, and conveyed through the water and discharged at the other end. In the month of October, 1894, one of these tanks was stripped of its chain and conveyor equipment, and in lieu thereof was provided with rails or skids for a roll way for the kegs, together with a revolving shaft at the discharge end on which lifting arms or hooks were mounted to pick up the kegs and thus discharge them automatically from the tank (filled with hot water) to a scrubbing device. The structure and operation of the machines so equipped as a barrel washer are described by numerous witnesses on one side and the other, and all concur in the substantial facts. It is contended (1) that the use shown was experimental and practically abandoned and (2) that the skids were not inclined and arranged for automatic operation. But neither of these propositions is tenable under the testimony. Continuous use of such equipment, in one and another of the tanks on hand, up to the time of taking the testimony, appears beyond doubt; and the facts that the skids were inclined, though differing in degree from the patent device, and that automatic operation was secured, are equally well authenticated. Moreover, it appears that this Blatz machine was shown to and examined by the patentee (appellant) in 1898 (when he visited

the brewery to introduce his patent device), and he neither explains the structure thus found, nor controverts the testimony, nor excuses his silence.

When the application for the patent was pending in the Patent Office, various claims were rejected upon rulings, (1) that "to incline the runs, if desired, displays no invention," and (2) respecting their adjustability, that "no invention is required to make anything adjustable." So the distinctions on which escape is sought from this prior structure and use are without force in any view of the present claims, and the patent cannot be upheld.

The decree dismissing the bill for want of equity, therefore, is affirmed.